**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIKE SHALES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 09-cv-1822 |
| ) | |
| PIPE-LINERS, LTD., and TERRY ) | Judge Robert M. Dow, Jr. |
| STANGER, individually, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| CURRAN CONTRACTING COMPANY, ) | |
| ) | |
| Third-Party Defendant, ) | |
| ) | |
| GOLDEN EAGLE COMMUNITY BANK, ) | |
| ) | |
| Intervenor. ) | |

**MEMORANDUM OPINION AND ORDER**

In this ERISA case, Plaintiffs, as Trustees of two Fox Valley Laborers' funds, filed a second amended complaint against Defendants Pipe-Liners, Ltd., and its president, Terry Stanger. [53.] The Court entered judgment for the Trustees on two counts. [65.] Golden Eagle Community Bank intervened on the grounds that it had perfected security interests in Pipe-Liners's accounts that took priority over the Trustees' judgment lien. [82.] Before the Court are Golden Eagle's motion [84] to vacate certain turnover orders, the Trustees' motions [93, 95, 138] for turnover orders, and the Trustees' motion [119] for miscellaneous post-judgment relief, all of which are tied to the priority issue. For the reasons stated below, the Court concludes that the Trustees have priority. Accordingly, the Trustees' motions [93, 95, 119, 138] are granted, and Golden Eagle's motion [84] is respectfully denied.

**I.      Background**

On March 31, 2008, Golden Eagle executed a promissory note and a commercial security agreement with Pipe-Liners. [84 at 4-13.] The agreement states that, "[i]f an Event of Default occurs under this Agreement, at any time thereafter, [Golden Eagle] shall have all the rights of a secured party under the Illinois Uniform Commercial Code." [84 at 10.] "Event of Default" includes Pipe-Liners's failure to comply with a term of the agreement. [84 at 5.] One term of the agreement is that Pipe-Liners "shall not * * * permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of [Golden Eagle]." [84 at 8.] "[U]ntil default," however, "[Pipe-Liners] may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents." [84 at 9.] On April 4, 2008, Golden Eagle filed a UCC financing statement with the Illinois Secretary of State. [84 at 14.] Golden Eagle estimates that Pipe-Liners currently owes the bank $401,200. [130 at 3.]

On March 24, 2009, the Trustees filed their original complaint. [1.] On July 14, 2011, the Court entered judgment on two counts in favor of the Trustees and against Pipe-Liners in the amount of $39,396.34. [65.] Shortly thereafter, the Trustees served citations to discover assets on, among others, Brooks Construction Company, Pipe-Liners, and Golden Eagle. [66, 68.] Golden Eagle answered the citation, stating that, pursuant to the citation, it had put a freeze on the $332.16 balance of Pipe-Liners's account. [91-1 at 6.] The Trustees subsequently filed the pending motion for turnover of this amount. [95.]

On September 20, the Court granted the Trustees' request for a turnover order directed at Brooks Construction for $945.49 [79] and a turnover order directed at Pipe-Liners for $2,880.24

[80]. Ten days later, Golden Eagle filed the pending motion to vacate these turnover orders, asserting its perfected security interest in Pipe-Liners's accounts and attaching its 2008 agreement with Pipe-Liners. [84.] That same day, Golden Eagle sent a letter to Pipe-Liners, stating that the notes that had matured on August 31 were in default, demanding payment in full by October 15, and threatening legal action. [102 at 26.]

Also in September, the Trustees served a citation to discover assets on Northeast Asphalt, Inc. [93-1.] They subsequently filed the pending motion for a turnover order directed at Northeast Asphalt for $11,805.44. [93.] The Court granted the motion in part, ordering the turnover but instructing the Trustees to hold the amount in trust pending resolution of Golden Eagle's motion to vacate.[1] [101.] On November 8, the Court entered an agreed judgment on all remaining counts in favor of the Trustees against Pipe-Liners in the amount of $43,969.21, plus $18,588.45 in attorneys' fees. [108.]

In January 2012, Pipe-Liners entered bankruptcy; accordingly, the Court stayed all pending matters.[2] [116.] In April, the Trustees filed the pending motion for miscellaneous post-judgment relief [119], requesting a declaration that the Trustees' lien is senior in priority to Golden Eagle's secured interest, an extension of the citation proceedings against Golden Eagle to December 14, and an order that Golden Eagle must provide an updated answer to the citation. [See 132.] The Trustees also served a citation to discover assets on Curran Contracting Company. [138-1.] In June, the Trustees filed the pending motion [138] for a turnover order directed at Curran Contracting for $78,792.68 and for leave to serve the company with an additional citation based on the November 8, 2011 judgment. [See 148.]

---

[1] The Court subsequently ordered the Trustees to hold $785.52 turned over from Berger Excavating, Inc. [128] and $3,811.18 turned over from Fifth-Third Bank [159].
[2] Defendant Stanger also filed for bankruptcy and has been discharged. [138 at 2.]

3

**II.     Analysis**

To repeat, the outcome of the pending motions is tied to the issue of whether the Trustees' judgment lien has a priority over Golden Eagle's security interest with regard to Pipe-Liners's assets.  See 735 ILCS 5/2-1402(m) ("The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section.").[3] The Trustees do not dispute that Golden Eagle perfected its security interest back in 2008.  [See 91 at 2, 4.]  Rather, the Trustees argue that Golden Eagle's inaction after the Court's July 14, 2011 judgment resulted in a forfeiture of its rights.  Golden Eagle bears the burden of proof on this issue.  See *S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC*, 560 F. Supp. 2d 647, 649 (N.D. Ill. 2008) (citing *Liberty Leasing Co. v. Crown Ice Mach. Leasing Co.*, 311 N.E.3d 250, 251-52 (Ill. App. Ct. 1974)).

The Trustees rely heavily on *S.E.I.U.* and another case, *One CW, LLC v. Cartridge World North America, LLC*, 661 F. Supp. 2d 931 (N.D. Ill. 2009), and with good reason.  The courts in those cases rejected similar arguments from intervenors based on identical contract language.  In *S.E.I.U.*, the plaintiff sought to enforce a judgment against Pinnacle by recovering funds due to Pinnacle from the Illinois Department of Healthcare and Family Services.  560 F. Supp. 2d at 648.  Premier Bancorp intervened, claiming that its undisputed, perfected security interest in the funds had priority over SEIU's judgment lien.  *Id.*  Based on language in the security agreement, however, the court concluded that Premier "only takes on the rights of a secured creditor under the UCC after a default occurs."  *Id.* at 650.  Accordingly, the court found that Premier Bancorp had a security interest on Pinnacle's assets upon two conditions: (1) a default had to occur, and (2) Premier Bancorp had to take an affirmative step to exercise its rights.  *Id.* at 650-51 (citing

---

[3] Illinois law applies to these post-judgment proceedings.  See Fed. R. Civ. P. 69(a).

4

*Frierson v. United Farm Agency, Inc.*, 868 F.2d 302, 305 (8th Cir. 1989)). The court concluded that, "despite the fact that Pinnacle may have technically defaulted on its loan, because Premier did not declare Pinnacle's loan in default or follow procedures required by the Security Agreement to enforce its U.C.C. and contractual rights, Premier does not have a present right to the funds nor a basis on which to object to their release." *Id.* at 651.

Similarly, in *One CW*, the plaintiff sought to enforce a judgment against Midwest, in part, by recovering funds in Midwest's account at Signature Bank. 661 F. Supp. 2d at 933. Signature Bank claimed that its undisputed, perfected security interest in the funds had priority over One CW's judgment lien. *Id.* The security agreement in question contained the same language as the one in *S.E.I.U. Id.* at 934. Unlike in *S.E.I.U.*, however, in *One CW*, the bank declared the loan in default on the day that it was served with a citation. *Id.* at 935. Still, the court found that Signature Bank had not taken affirmative steps thereafter to enforce its rights to Midwest's assets. *Id.* (citing *Martens v. Hadley Mem'l Hosp.*, 729 F. Supp. 1391, 1392 (D.D.C. 1990)). Accordingly, the court followed *S.E.I.U.* in finding that the bank could not object to the plaintiff's demand for the funds in question. *Id.*

Golden Eagle, on the other hand, points to *West Bend Mutual Insurance Company v. Belmont State Corp.*, No. 09 C 354, 2010 WL 5419061 (N.D. Ill. Dec. 23, 2010). In *West Bend*, the court distinguished *S.E.I.U.* and *One CW* because the agreement in *West Bend* "contain[ed] no preconditions or qualifications to claiming [a] security interest." *Id.* at *10. This fact renders *West Bend* inapposite because, as previously explained, the agreement here contains the *exact same language* as the agreement in *S.E.I.U.* and *One CW*. Golden Eagle's arguments to the contrary [see 102 at 7-10] are not persuasive.

Golden Eagle also attempts to distinguish *S.E.I.U.* and *One CW* by arguing that, unlike the banks in those cases, Golden Eagle did take an affirmative step to exercise its rights after Pipe-Liners's default. [See 102 at 10-11.] The Trustees, in turn, argue that even accepting Golden Eagle's argument that Pipe-Liners defaulted on July 14, 2011, Golden Eagle did not do enough to preserve its rights. The Court agrees. Golden Eagle took no action until September 30, well after the Trustees had served several citations to discover assets, including the ones directed to Pipe-Liners and Golden Eagle. And at that time, Golden Eagle merely sent a letter to Pipe-Liners, demanding payment for notes that had already matured. In sum, Golden Eagle has not fulfilled the two requirements set forth in *S.E.I.U.* and *One CW*, nor has the bank provided the Court with a reason to distinguish those cases. As such, Golden Eagle has not met its burden of proof on the priority issue.

Golden Eagle also argues that it claimed a right to setoff. See *One CW*, 661 F. Supp. 2d at 936. The Court disagrees. First, Golden Eagle did not mention a right to setoff in its answer to the citation to discover assets, or even in its motion to vacate. Golden Eagle's contention that the argument was preserved because the right was mentioned in the agreement *attached to* the motion is not persuasive. Second, Golden Eagle's attempt to distinguish *One CW* falls flat. There, the court rejected a similar argument where "Signature Bank has claimed a right to set-off [in its objections to the citation], but has failed to take any steps to actually exercise this right." *Id.* Here, Golden Eagle did not do so in a timely fashion.

6

**III.    Conclusion**

For the reasons stated above, the Trustees' motions [93, 95, 119, 138] are granted, and Golden Eagle's motion [84] is respectfully denied. Amounts held in trust are ordered to be applied to satisfy the Trustees' July 14, 2011 judgment. Citation proceedings against Golden Eagle are extended to and including December 14, 2012. Golden Eagle also is ordered to provide an updated answer to the citation. Curran Contracting is ordered to turn over to the Trustees an amount sufficient to satisfy the July 14, 2011 judgment after the amounts held in trust are applied. Finally, the Trustees are granted leave to serve Curran Contracting with an additional citation based on the November 8, 2011 judgment.

Dated:   10/9/2012

Robert M. Dow, Jr.
United States District Judge